UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MILTON ALVARADO BENAVIDEZ, | ) | Case No. 4:07CV3334 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| PATRICIA STANSBERRY, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

The instant matter is before the Court on Defendant NEOCC Medical Director John Doe's ("Defendant Doe") Motion to Dismiss, which has been referred to the undersigned for a report and recommendation.  ECF Dkt. #18.  For the following reasons the undersigned RECOMMENDS that the Court GRANT the instant motion and DISMISS Plaintiff's complaint, in its entirety, WITH PREJUDICE:

## I.    PROCEDURAL HISTORY

On September 5, 2007, Plaintiff filed a complaint against (1) FCC Petersburg Warden Patricia Stansberry, (2) Dr. Sushini Shah and Medical Director Ed Ong of FCC Petersburg, (3) M. Kozar and R. Glass, "Medical Records" at FCC Petersburg, (4) the United States Marshals Service, (5) the Warden of Youngstown, Ohio Recreational Center, and (6) LPH J. Artic, LPN T. Artic, and the Medical Director at Youngstown, Ohio "Receptional Center."  ECF Dkt. #1.  Plaintiff filed the case in the Eastern District of Virginia, where the Honorable James C. Cacheris offered the following synopsis of Plaintiff's factual allegations:

> On July 22,2006, plaintiff, who previously suffered a lumbar spinal fracture, alleges that he "fell down steps as a result of grave negligence on the part of officials at Youngstown Reception Center." Compl. 4. As a result of the fall, plaintiff broke his right femur in five places. Plaintiff alleges a delay of "a few hours" in receiving medical attention, which he claims led to "prolonged and extreme pain and unnecessary complications in the treatment of his injuries." *Id*. Plaintiff underwent surgery on his right femur on July 24th, 2006 and spent the two succeeding months in a wheelchair. He alleges that he received "no therapy or adequate after care from the surgery, only verbal abuse by medical staff." *Id*. Plaintiff alleges further that he was

transferred to FCC Petersburg as a result of complaining of inadequate after care. *Id*.
[These incidents allegedly occurred at Northeast Correctional Center in Youngstown,
Ohio.  ECF Dkt. #1 at 4.]

On September 25,2006, plaintiff was placed on a bus headed to Harrisburg,
Pennsylvania, and was then shuttled to Warsaw, Virginia, where he stayed for eight
days before being transported to FCC Petersburg. *Id*. Plaintiff complains that his
Eighth Amendment rights were violated because he received no medical attention
during the transfer. *Id*.

Upon arrival at FCC Petersburg, plaintiff alleges that defendant Dr. Shah was
deliberately indifferent to his serious medical needs. Compl. 6. Specifically, plaintiff
asserts that "the course of treatment provided by Dr. Shah was medically
unacceptable." Compl. 7. Plaintiff states further that "in the beginning of the care, Dr.
Shah [sic] attitude was very negative to claimant [sic] serious problems... she
substituted her personal judgment... and decided to take the easier and cheaper but less
effective treatment for claimants [sic] very serious medical problem." Compl. 6.

Additionally, plaintiff includes four other staff members at FCC Petersburg as
defendants in his complaint. He includes Warden Patricia Stansberry, Ed Ong, the
Medical Director, as well as M. Koar and R. Glass, both of whom manage the medical
records. Plaintiff alleges that M. Koar and R. Glass "denied [him] access to court for
over (7) months by refusing to release plaintiff [sic] medical records." Compl. 5.

ECF Dkt. #4 at 2-3.  Judge Cacheris stated that the case should be construed as being brought

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971), which extends § 1983 liability to federal officials.  *Id*. at 1.  Judge Cacheris reasoned that

all of Plaintiff's claims are against federal officials.  *Id*.  Judge Cacheris dismissed all of Plaintiff's

claims, except for those arising from events that occurred at Northeast Ohio Correctional Center

("NEOCC") in Youngstown, Ohio.  *Id*. at 7.  Consequently, the case was transferred to this Court.

*Id*.; ECF Dkt. #5.

On January 2, 2008, the Court dismissed Plaintiff's claim against the Youngstown Reception

center, leaving only claims against NEOCC Medical Director John Doe, Nurse J. Artic, and Nurse

Arthur (collectively "NEOCC Defendants"). ECF Dkt. #7.  The Court further noted that none of the

remaining defendants had been served with process.  *Id*. at 4.  Accordingly, the Court ordered

Plaintiff to provide two summonses and a U.S. Marshal form for each of these defendants within

thirty days of its order.  *Id*.  On February 11, 2008, the Court dismissed the case for Plaintiff's failure

to comply with the January 2, 2008 order.  ECF Dkt. #9, 10.   On February 15, 2008, Plaintiff filed

a letter informing the Court that he had been transferred to a new facility, and the transfer caused

him to be late in filing the summonses.  ECF Dkt. #11.  On February 19, 2008, the Court vacated

its judgment and re-opened the case. ECF Dkt. #12.

On March 28, 2008, the U.S. Marshal Service filed a Return of Service Unexecuted as to Nurse Arthur and Nurse Artic. ECF Dkt. #16. On March 31, 2008, the U.S. Marshal Service filed a Return of Service Executed as to Northeast Ohio Correctional Center's Medical Director, John Doe. ECF Dkt. #16.

On April 8, 2008, NEOCC Defendants filed the instant Motion to Dismiss.[1] ECF Dkt. #18. On July 14, 2008, Plaintiff filed a brief in opposition to NEOCC Defendants' motion. ECF Dkt. #27. On July 24, 2008, NEOCC Defendants filed a reply. ECF Dkt. #28.

## II.    CONSTRUING NEOCC DEFENDANTS' MOTION

As a preliminary note, NEOCC Defendants filed the instant motion as a motion to dismiss, however, the undersigned recommends that the Court treat the motion as a motion for summary judgment because NEOCC Defendants rely on evidence extrinsic to the complaint and because the motion does not fall under one of the seven classifications in Federal Rule of Civil Procedure 12(b). First, in light of the Supreme Court's decision in *Jones v. Bock,* 549 U.S. 199, (2007), it is clear that the instant motion cannot be brought pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] The *Jones* court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* Therefore, failure to exhaust under the PLRA does not constitute grounds for a Rule 12(b)(6) motion.

NEOCC Defendants contend that the instant motion should be construed as an

---

[1]     Defense counsel indicates that Plaintiff has failed to perfect service upon Defendants Artic and Arthur. ECF Dkt. #18 at n.1. Counsel "urge[s] the court to consider the instant motion as it applies to all of Plaintiff's claims against all remaining CCA Defendants." *Id.* The undersigned finds that the instant motion should be considered with regard to all NEOCC Defendants because Attorney Bojanowski filed an appearance on behalf of the employees of Corrections Corporation of America ("CCA Defendants"), which would include Defendants Artic and Arthur. ECF Dkt. #15. Therefore, Defendants Artic and Arthur should be heard on the instant motion.

[2]     NEOCC Defendants do not contend that their motion is being brought pursuant to Rule 12(b)(6), however, in light of the Supreme Court's recent decision in *Jones*, the undersigned feels it is helpful to address the issue.

-3-

"unenumerated Rule 12(b) motion" rather than a motion for summary judgment.  ECF Dkt. #28.

NEOCC Defendants rely on the Ninth Circuit Court of Appeals' decision in *Wyatt v. Terhune*, 315

F.3d 1108, 1119 (9th Cir. 2003), where the court stated that "the failure to exhaust nonjudicial

remedies that are not jurisdictional should be treated as an unenumerated Rule 12(b) motion rather

than a motion for summary judgment."  The *Wyatt* court reasoned that, as a general principle,

summary judgment is on the merits, whereas dismissal of an action on the ground of failure to

exhaust administrative remedies is not on the merits.  *Wyatt*, 315 F.3d at 1119.

The undersigned respectfully disagrees with the *Wyatt* court's analysis because: (1) the text

of Federal Rule of Civil Procedure 12(b) clearly demonstrates that only seven enumerated defenses

may be raised by motion, as opposed to in a responsive pleading; (2) the 1946 advisory committee

comments demonstrate that only enumerated defenses may be raised by motion; and (3) based on

the text of Rule 56 and its application in this Circuit, summary judgment is not necessarily a ruling

on the merits.  First, Federal Rule of Civil Procedure 12(b) provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. **But a party may assert the following defenses by motion**:
>
> > (1) lack of subject-matter jurisdiction;
> >
> > (2) lack of personal jurisdiction;
> >
> > (3) improper venue;
> >
> > (4) insufficient process;
> >
> > (5) insufficient service of process;
> >
> > (6) failure to state a claim upon which relief can be granted; and
> >
> > (7) failure to join a party under Rule 19.
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b) (emphasis added).  The text of the rule indicates that the list of motions is

exhaustive because there is no provision for filing a dispositive motion that is not enumerated.

-4-

Further, the 1946 Advisory Committee notes state that "The addition of defense (7), 'failure to join an indispensable party,' *cures an omission in the rules*, which are silent as to the mode of raising such failure." Fed. R. Civ. P. 12(b) 1946 Advisory Committee Notes (emphasis added) (internal citations omitted). These notes indicate that only enumerated motions may be filed as a motion to dismiss. Otherwise, the Supreme Court would not have found it necessary to add 12(b)(7) to the Federal Rules in order to "cure an omission." Therefore, it is clear that no such thing as an "unenumerated 12(b) motion" exists. Lastly, Federal Rule of Civil Procedure 56 does not require that summary judgment be granted on the merits of the case. Rule 56 provides in its pertinent part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the *movant is entitled to judgment* as a matter of law.

Fed. R. Civ. P. 56(c). Rule 56(c) does not state that the movant must show that he is entitled to a judgment *on the merits* as a matter of law. Further, it is entirely possible that, upon consideration of the available evidence, a court can find that no genuine issue of material fact exists as to a *procedural requirement* of the claim, such as exhaustion of administrative remedies. The undersigned's interpretation of Rule 56 is supported by the holding in *Ravencraft v. UNUM Life Ins. Co. of America*, 212 F.3d 341 (6th Cir. 2000), where the Sixth Circuit Court of Appeals held that it would be appropriate to grant summary judgment and dismiss a complaint without prejudice when a Plaintiff failed to exhaust his administrative remedies.

In the alternative, NEOCC Defendants urge the Court to consider their motion as a motion to dismiss for lack of subject matter jurisdiction. ECF Dkt. #28 citing *Mardirossian v. Paul Revere Life Ins. Co.*, 286 F.3d 733, 735 (4th Cir. 2002). In *Mardirossian*, the court reasoned that summary judgment was improper because it constituted a ruling on the merits; therefore, the court concluded that dismissal for lack of subject matter jurisdiction was appropriate. *Mardirossian*, 286 F.3d at 735. While the Fourth Circuit has adopted the position that failure to exhaust administrative remedies deprives a district court of jurisdiction, the undersigned finds the Seventh Circuit's statutory analysis to be more persuasive. In *Perez v. Wis. Dep't Corr.*, 182 F.3d 532, 535-6 (7th Cir.1999), the Seventh Circuit reasoned that the failure to exhaust administrative remedies under the PRLA is not

-5-

jurisdictional unless it is "essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy" the PRLA statute lacks the "sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements." *See also Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir.2003) (where the Second Circuit adopted the Seventh Circuit's analysis in *Perez*). The PRLA provides in its pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The statute does not specifically remove jurisdiction for unexhausted claims. If Congress intended to do so, the statute may have read, for example, that federal courts "shall not have jurisdiction" over unexhausted claims. Congress chose not to include any jurisdictional language. Accordingly, the undersigned concurs with the *Perez* and *Richardson* courts' determination that there is nothing in the text of 42 U.S.C. §1997e to suggest that Congress intended to wholly deprive federal courts of their jurisdiction rather than to codify the administrative exhaustion requirement.

For the foregoing reasons, the undersigned posits that failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an issue that can only properly be decided in the posture of a motion for summary judgment. Therefore, the instant motion should be construed as a motion for summary judgment.

The next issue is whether the Court can construe NEOCC Defendants' motion as a motion for summary judgment without providing further notice to Plaintiff. "When a district court grants summary judgment sua sponte, its decision is subject to two separate standards of review. The substance of the district court's decision is reviewed de novo under the normal standards for summary judgment. The district court's procedural decision to enter summary judgment sua sponte, however, is reviewed for abuse of discretion." *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005). In exercising its discretion, the trial court must ensure that the "losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to

respond to all the issues to be considered by the court." *Id*.

In the case at bar, Plaintiff requested limited discovery related to NEOCC Defendants' motion to dismiss.  ECF Dkt. #19.  The Court granted the motion.  Further, Plaintiff's response to NEOCC Defendants' motion includes several exhibits that are extrinsic to the complaint.  Where, such as here,  a motion to dismiss is based upon evidence extrinsic to the complaint and the nonmoving party responds with extrinsic evidence of his own, the Court can comfortably find that the nonmoving party had sufficient notice that the Court would be addressing the merits of the issue. *See Eisenberg v. Progress Federal Sav. Bank*, Case No. Civ. A. No. 92-4508, 1992 WL 333894 (E.D.Pa. Nov. 5, 1992) (A district court construed a motion to dismiss as a motion for summary judgment without providing further notice where, inter alia, the non-movant's "filing of his own supporting affidavits evidences that both parties had notice that this Court would consider the Motion as one for Summary Judgment under Rule 56.").  In this case, Plaintiff has responded with is own extrinsic evidence, and, therefore, cannot claim that he lacked notice of the possibility that the instant motion could have been construed as a motion for summary judgment.

## III.    STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact.  *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial.  *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 317, 323 (1986); *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995).  The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party.  *Id.*

-7-

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F .2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

IV.     **ANALYSIS**

 A.     **EXHAUSTION OF REMEDIES**

NEOCC Defendants contend that no genuine issue of material fact exists as to Plaintiff's failure to properly exhaust administrative remedies prior to filing the instant suit. ECF Dkt. #18 at 3.

An action brought pursuant to *Bivens* requires the exhaustion of administrative remedies under the PLRA, just like an action under 42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. 516 (2002). The PLRA requires that a prisoner bringing a cause of action "with respect to prison conditions under § 1983 of this title, or any other Federal law" must first exhaust all administrative remedies. 42 U.S.C. § 1997e(a). The United States Supreme Court has held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 517.

In *Jones v. Bock*, the United States Supreme Court overturned three specific rules imposed by the Sixth Circuit Court of Appeals on prisoners under the exhaustion requirement of the PLRA. 549 U.S. 199. The Court held that: (1) "failure to exhaust is an affirmative defense under the PLRA,

-8-

and [that] inmates are not required to specially plead or demonstrate exhaustion in their complaints";
(2) while the PLRA required exhaustion of administrative remedies, "nothing in the statute imposes
a 'name all defendants' requirement along the lines of the Sixth Circuit's judicially created rule";
and (3) a prisoner's complaint cannot be dismissed in its entirety when only some, but not all, of
his claims are unexhausted. *Id.* at 919-924.

Here, the NEOCC grievance policy requires a prisoner to first informally address a
grievance. ECF Dkt. #18, Attach. A. at §14-5.4. If the informal process does not resolve the issue,
then the prisoner must file an Inmate/Resident Grievance Form (Form 14-5A) and forward it to the
facility grievance officer. *Id.* at §14-5.5(I)(1). The inmate must file the grievance within seven days
of the alleged incident, with the time being calculated from the date that the prisoner became aware
of the incident. *Id.* at §14-5.5(G)(1)(a).

NEOCC Defendants have submitted an affidavit from Jillian Shan Treharn, an Executive
Assistant and Facility Grievance Officer at NEOCC. ECF Dkt. #18, Ex. 1. Ms. Treharn avers that
she is familiar with CCA grievance procedures and her duties include maintaining *all* grievance
records and documents. *Id.* at ¶4 (emphasis added). Ms. Treharn further avers that, on July 12,
2006, Plaintiff acknowledged receipt of an Inmate Information Handbook, which contains a copy
of the NEOCC grievance policy. *Id.* at ¶6-7. Lastly, Ms. Treharn avers that she has thoroughly
reviewed the grievance log for the period from July 12, 2006 through September 12, 2006 and found
no grievances submitted by Plaintiff. *Id.* at ¶12.

Plaintiff responds that he "made a bona fide intent to exhaust the available remedy." ECF
Dkt. #27 at 1. Plaintiff concedes, however, that he "never filed any grievances other than putting
the administration on notice of his ʻlower back injury' at the time he was admitted for resident [sic]
at the facility." *Id.* at 2 (emphasis original). Plaintiff contends that his failure to file a grievance is
excusable because he only received a copy of the NEOCC's Inmate Information Handbook in
English, and he is able understand only the Spanish language. *Id.* at 2-3. Plaintiff further contends
that he was unable to file a grievance because he was hospitalized for twelve days following the July
22, 2006 incident giving rise to this suit. *Id.* at 3. Lastly, Plaintiff contends that he filed a "BP-10
grievance" with the BOP Regional Office. *Id.*

-9-

Plaintiff's arguments are not compelling.  First, the PRLA does not require an intent to exhaust; the text of §1997e(a) clearly requires *actual* exhaustion because the statute makes no mention of intent.  *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("the PLRA exhaustion requirement requires proper exhaustion.");  *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this . . . until such administrative remedies as are available are exhausted.).

Second, Plaintiff's argument related to the English-only version of the Inmate Information Handbook is not compelling because the Supreme Court has held that courts should not read exceptions into the PRLA's exhaustion requirement.  *Booth v. Churner*, 532 U.S. 731, n. 6 (2001) ("we stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").  NEOCC Defendants also point the Court to two cases where district courts held that a failure to provide a copy of the prison's grievance procedure in Spanish does not excuse the exhaustion requirement.  ECF Dkt. #28, at n. 15 citing *Calderon v. Anderson*, No. Civ. A. 5:04-1116, 2005 WL 2277398 at *1 (S.D. W. Va. September 19, 2005) (approving Magistrate Judge's finding that there is no compelling argument "that the exhaustion requirement should be waived because they are not produced in Spanish, plaintiff's native language."); *Sosa v. Cleaver*, No. 3:03CV1707DJSTPS, 2005 WL 1205119 at *3 (D. Conn. May 18, 2005) (finding that "the lack of a Spanish version of the inmate handbook is not a special circumstance in this case that would justify [plaintiff's] failure to file a grievance" when "all of the pleadings in this case have been submitted in English.").  The undersigned finds NEOCC Defendants' argument to be compelling.  In light of the Supreme Court's holding in *Booth*, and the lack of any language in the PRLA indicating that an exception to the exhaustion requirement is available, the undersigned finds that the NEOCC's alleged failure to provide a copy of the grievance procedure in Spanish does not excuse the Plaintiff's obligation to exhaust available administrative remedies prior to pursuing the instant suit.

Third, Plaintiff's argument regarding his hospitalization is not compelling because Plaintiff could have prepared a grievance and given it to a correctional officer at the hospital for delivery to the Facility Grievance Officer.  NEOCC Defendants submitted a second affidavit from Jillian Shan

Treharn, who points out that Plaintiff could have delivered his grievance to a correctional officer at the hospital pursuant to Grievance Policy Section 14-5.5(I). The Grievance Policy states that an inmate can forward his grievance to the Facility Grievance Officer. ECF Dkt. #18, Attach. A at §14-5.5(I)(1). The Policy is consistent with Ms. Treharn's averment, and Plaintiff has presented no contradictory evidence. Therefore, the Court should find that Plaintiff was able to forward his grievance through a correctional officer. Accordingly, summary judgment is appropriate. Moreover, the Grievance Policy states that "[t]he total time for the grievance process will be no more than ninety (90) days from the filing to a final appeal decision, unless *unusual circumstances are present*." *Id*. at §14-5.5(G)(1) (emphasis added). Therefore, the NEOCC grievance policy does allow for exceptions in unusual circumstances. Plaintiff, however, did not pursue a possible extension. Instead, he filed a grievance with the BOP on October 31, 2006, well after the July 22, 2006 incident. *See* ECF Dkt. #27, Ex. 5.

Lastly, Plaintiff's argument that he filed a grievance with the BOP is not compelling because it does not constitute proper exhaustion. The NEOCC Grievance Policy clearly requires a grievance to first be filed with the Facility Grievance Officer, not the BOP's regional office. ECF Dkt. #18, Attach. A at §14-5.5(I)(1). Moreover, the BOP's regional office noted that Plaintiff's grievance violated their policy because Plaintiff did not file a BP-9 request through the warden before appealing to the BOP's regional office. ECF Dkt. #27, Ex. 5. Therefore, Plaintiff's BP-10 grievance does not satisfy the PRLA's exhaustion requirement.

For the foregoing reasons, the undersigned recommends that the Court find that Plaintiff has failed to exhaust available administrative remedies. The undersigned further recommends that the Court dismiss the instant suit with prejudice because Plaintiff is now well beyond the seven-day grievance filing period, and Plaintiff made his first effort to file a grievance on October 31, 2006, well after the July 22, 2006 incident. *See Hall v. Baptist Healthcare System, Inc.*, Case No. 3:07-CV-292 2007 WL 4119035 (W.D.Ky. Nov. 14, 2007), unreported (In dismissing a claim for insurance benefits with prejudice, a district court stated that "[t]he Plaintiffs here, however, unlike the plaintiff in *Ravencraft*, filed suit long after the deadline for pursuing administrative remedies had expired and, thus, dismissal with prejudice is warranted. Dismissal without prejudice is only

appropriate whenever a claim for benefits can still be brought and that is impossible here."); *Poniewierski v. Unum Life Assur. Co. of America, Inc.*, Case No. No. 05-72431, 2006 WL 2385045 at*4 (E.D.Mich., Aug. 17, 2006), unreported ("because the time to seek administrative review of the decision has long since passed, his complaint is dismissed with prejudice.").  Therefore, it would be futile for Plaintiff to pursue a grievance at the administrative level.  Although the NEOCC Grievance Policy allows for an extension of time in unusual circumstances, Plaintiff failed to attempt to file a grievance until 101 days after the incident, making it extremely unlikely that Plaintiff would be permitted to file his grievance under the "unusual circumstances" provision.  Consequently, the undersigned believes it would be proper to dismiss the instant case with prejudice.

## B.    THE MERITS OF PLAINTIFF'S *BIVENS* CLAIM

NEOCC Defendants also contend that Plaintiff has failed to allege a cognizable *Bivens* claim. In light of the undersigned's foregoing recommendation that the instant case be dismissed for failure to exhaust administrative remedies, it is unnecessary to address the merits of Plaintiff's case.

## V.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT the instant motion and DISMISS Plaintiff's complaint, in its entirety, WITH PREJUDICE.

Dated: August 5, 2008                                  */s/ George J. Limbert*
                                                      George J. Limbert
                                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).