## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **MILTON ALVARADO BENAVIDEZ,**  )  )  ) | **CASE NO.  4:07CV03334** |
| Plaintiff,  )  ) | **JUDGE PETER C. ECONOMUS** |
| v.  )  ) | |
| **PATRICIA STANSBERRY, et al.,**  )  )  ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants.  )  ) | |

The instant matter is before the Court on Defendant Northeast Ohio Correctional Center ("NEOCC") Medical Director John Doe's ("Defendant Doe") Motion to Dismiss Plaintiff Milton Alvarado Benavidez's ("Benavidez") Complaint.  (Dkt. # 18).

## I. PROCEDURAL BACKGROUND

On May 24, 2007, this case was automatically referred to Magistrate Judge George J. Limbert for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636 and LR 72.1.  (Dkt. # 8).  On August 5, 2008, the Magistrate Judge issued a Report and Recommendation.  (Dkt. # 29).  In the Report and Recommendation, the Magistrate Judge recommended that the Court treat the Motion to Dismiss as a Motion for Summary Judgment.  (Dkt. # 29).  The Magistrate Judge further recommended that the Court grant Summary Judgment in favor of Defendant Doe and dismiss Benavidez's Complaint, in its entirety, with prejudice, because Benavidez failed to exhaust available administrative remedies.  (Dkt. # 29).  Benavidez timely filed objections to the Magistrate Judge's

1

Report and Recommendation. (Dkt. # 33). Defendant Doe then filed a Response to Benavidez's objections. (Dkt. # 34). For the following reasons, Benavidez's objections are overruled.

## II. ANALYSIS

As a preliminary matter, Benavidez urges the Court to construe a previous Motion entitled "Traverse to Defendant's Motion to Dismiss" (Dkt. # 27) as an extension of his "Objection to Magistrate's Report and Recommendation." (Dkt. # 33). The Court will not consider the previously filed Motion as part of Benavidez's objections. The Magistrate Judge has already addressed that Motion in his Report and Recommendation (Dkt. # 33), and the Court will not endeavor to repeat that exercise. Rather, the Court will only address the specific objections contained within Benavidez's "Objection to Magistrate's Report and Recommendation." (Dkt. # 33).

### A. First Objection

First, Benavidez objects to the Magistrate Judge's dismissal of his tort claim. Benavidez argues that, even if the Magistrate Judge properly dismissed his constitutional claims—for failure to exhaust the available administrative remedies—his "tort claim should [have stood] as a matter of law" because it was "timely filed . . . to the appropriate agency." (Dkt. # 33 at 2). On July 31, 2007, Benavidez filed a claim with the Federal Bureau of Prisons' ("BOP") Mid-Atlantic Regional Office, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2672, alleging constitutional and tort violations. (Dkt. # 31, Ex. 1 at 5). He sought compensation in the amount of $10,000,000.00. (Dkt. # 31, Ex. 1 at 5).

The Magistrate Judge determined that Benavidez's claim did not satisfy the Prison Litigation Reform Act's ("PLRA") requirement that inmates properly exhaust all administrative remedies before bringing a lawsuit. See 42 U.S.C. § 1997e(a) ("No Action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted."). (Dkt. # 29). The Court agrees with the Magistrate Judge's determination.

The Corrections Corporation of America ("CCA") operates the Northeast Ohio Correctional Center ("NEOCC") where Benavidez was imprisoned. (Dkt. # 18, Ex. 1 ¶1). When a U.S. Marshal's ("U.S.M.") inmate arrives at the facility, NEOCC provides that inmate with a copy of the U.S.M. Inmate Handbook ("Handbook"), which contains a summary of the facility's grievance policies and procedures. (Dkt. # 18, Ex. 1 ¶6). At NEOCC, the formal grievance process for USM inmates contains two steps:

> a. Inmates must initially send grievances, on the CCA Inmate/Resident Grievance Form (Form 14-5A), to the Grievance Officer within seven (7) days of the alleged incident. (Step One). The time for filing begins from the date the problem or incident became known to the inmate/resident.
>
> b. If the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the Request for Warden/Administrator Review portion of the Grievance Form (Step Two).

(Dkt. # 18, Ex. 1 ¶9). If an inmate fails to follow this procedure or omits any part of it, he has not exhausted the available administrative remedies. (Dkt. # 18, Ex. 1 ¶11).

3

Upon his arrival at NEOCC on July 12, 2006, Benavidez received a copy of the Handbook.  (Dkt. # 18, Ex. 1 ¶7).  Benavidez acknowledged receiving the Handbook by signing the Inmate/Resident Handbook Acknowledgment form on July 12, 2006.  (Dkt. # 18, Ex. 1 ¶7).  Yet, the Facility Grievance Officer at NEOCC, Jillian Shane Trehan, avers that she "thoroughly reviewed the grievance log for the period from July 12, 2006 through September 12, 2006 and found that Inmate Benavidez did not submit any grievances while he was detained at NEOCC."  (Dkt. # 18, Ex. 1 ¶12).  And Benavidez concedes that he never submitted a grievance.  (Dkt. # 27 at 2).  Thus, Benavidez failed to exhaust the available administrative remedies.

The Fact that Benavidez filed a claim with BOP's regional office is wholly irrelevant as it does not constitute proper exhaustion.  As the Magistrate Judge correctly stated, "The NEOCC Grievance Policy clearly requires a grievance to first be filed with the Facility Grievance Officer, not the BOP's regional office."  (Dkt. # 29 at 11).  Benavidez did not submit any grievances while he was detained at the NEOCC; consequently, he did not satisfy the PLRA's exhaustion requirement.  The Court agrees with the Magistrate Judge's analysis.  Therefore, Benavidez's first objection is overruled.

### B.  Second Objection

Second, Benavidez objects to the Magistrate Judge's finding that the NEOCC's alleged failure to provide a copy of the grievance procedure in Spanish does not excuse Benavidez from his obligation to exhaust available administrative remedies.  The Magistrate Judge relied primarily on the Supreme Court's decision in Booth v. Churner, 532 U.S. 731 (2001), in which the Court held that courts should not read exceptions into

4

the PLRA's exhaustion requirement.  Id. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").  The Magistrate Judge also relied, in part, upon two cases in which district courts held that a failure to provide a copy of the prison's grievance procedure in Spanish does not excuse the PLRA's exhaustion requirement.  See Calderon v. Anderson, No. Civ.A 5:04-1116, 2005 WL 2277398, at *1 (S.D. W. Va. Sept. 19, 2005) (approving the Magistrate Judge's "discount[ing] [of] plaintiff's argument that the exhaustion requirements should be waived because they [were] not produced in Spanish, plaintiff's native language."); Sosa v. Cleaver, No. 3:03CV1707DJSTPS, 2005 WL 1205119, at *3 (D. Conn. May 18, 2005) (concluding "that the lack of a Spanish version of the inmate handbook is not a special circumstance . . . that would justify [plaintiff's] failure to file a grievance.").

Benavidez argues that because the NEOCC Defendants knew he did not speak English they should have provided him with a Spanish version of the Handbook, which would include a summary of the facility's grievance policies in Spanish.  (Dkt. # 33). Benavidez's argument raises an interesting question as to whether a non-English speaking Hispanic prisoner is still obligated, under the PLRA, to fully and properly exhaust all grievance procedures, even if he does not receive a copy of those procedures in Spanish.

Defendant Doe responds by reiterating the averments made by Jillian Shane Trehan in her Second Affidavit.  (Dkt. # 34).  According to Ms. Trehan, at all relevant times, there were at least thirty staff members at the NEOCC who were fluent in both

5

English and Spanish.  (Dkt. # 28, Ex. 1 ¶4).  She avers that, "At any time had Inmate Benavidez sought information in Spanish regarding the grievance procedure, he could have asked and a staff member would have assisted."  (Dkt. # 28, Ex. 1 ¶4).  Defendant Doe echoes this claim, "During Plaintiff's incarceration at NEOCC, no less than 30 staff members were bi-lingual in English and Spanish, any of whom could have provided an explanation of the grievance process or assistance in following it, if Plaintiff had merely asked."  (Dkt. 34 at 6).  Of course, these arguments assume (1) that Benavidez could readily identify the thirty bi-lingual staff members out of the more than four hundred institutional staff members, and (2) that Benavidez was aware of the existence of a grievance procedure.  Neither assumption is self-evident.

Ms. Trehan goes on to aver that, had Benavidez submitted a grievance in Spanish, it would have been "translated by a bi-lingual staff member, and . . . fully considered, in accordance with the grievance policy."  (Dkt. # 28, Ex. 1 ¶5).  Defendant Doe concurs, "[I]nformal resolutions, grievances, and grievance appeals that are written in Spanish, are routinely translated, fully considered and addressed."  (Dkt. # 34 at 6).  But the likelihood that Benavidez would have submitted a grievance in Spanish, without knowledge of (1) the grievance procedure itself or (2) the willingness of bi-lingual staff members to translate a grievance in Spanish, is slim.

Finally, Ms. Trehan avers that in unusual circumstances—such as hospitalization following a grievable incident—an inmate is "normally permitted seven days following their [sic] discharge from the hospital [to] return to NEOCC . . . to timely submit a grievance."  (Dkt. # 28, Ex. 1 ¶7).  Defendant Doe reiterates this notion, "[O]utside

hospitalization constitutes a reasonable circumstance where a limited extension of time would be permitted to submit a grievance." (Dkt. # 34 at 6). Again, the usefulness of this fact depends upon Benavidez's knowledge of (1) the grievance procedure itself and (2) this unusual-circumstances exception which extends the ordinary deadline for filing a grievance.

Moreover, the Court notes that the Inmate/Resident Handbook Acknowledgment form that Benavidez signed upon entering NEOCC informed Benavidez—in both English *and Spanish*—that "By signing below, [you] acknowledge receiving an Inmate/Resident Handbook on this Date." (Dkt. # 18, Ex. 1, Att. C). But the Handbook itself was written solely in English. The absence of a Spanish translation of the Handbook seems especially peculiar given the fact that NEOCC has a large Hispanic population. See Correction Institution Inspection Committee Report, Onsite Visit at the Northeast Ohio Correctional Center (July 26, 2006), http://www.ciic.state.oh.us/reports/neocc.pdf ("The higher percentage of Hispanic[] [staff members] is surely to NEOCC's advantage, given its high Hispanic Population."). Id. at 8. And as far back as 1998, the District of Columbia Department of Corrections, in a Contract Monitor's Deficiency Report, urged the NEOCC to distribute a Spanish version of the Inmate Handbook. See Memorandum from Will Golar, Contract Monitor DC DOC, regarding Contract Monitor's Deficiency Report to Jimmy Turner, NEOCC Warden (Oct. 8, 1998), http://www.usdoj.gov/ag/youngstown/append11.htm ("English version of inmate handbook has been distributed. Awaiting distribution of revised version for Spanish-speaking inmates . . . . Terminal date for distribution is needed.").

Nevertheless, for the purposes of Benavidez's objections to the Magistrate Judge's Report and Recommendation, NEOCC's failure to provide Benavidez with a copy of the Handbook in Spanish does not excuse his failure to exhaust available administrative remedies. There is no authority that permits the Court to read an exception into the PLRA's exhaustion requirement on the basis of a failure to provide a Spanish version of the Handbook. The Magistrate Judge correctly concluded that the Supreme Court's holding in Booth, 532 U.S. 731, and the lack of any language in the PLRA allowing for an exception to the exhaustion requirement are controlling. Thus, Benavidez has failed to exhaust available administrative remedies, and his second objection is overruled.

## III. CONCLUSION

The Court has reviewed the Report and Recommendation of the Magistrate Judge *de novo*, and finds that it is well-supported. Benavidez's objections are without merit. Therefore, the Court hereby **ADOPTS** Magistrate Judge Limbert's Report and Recommendation (Dkt. # 29), **GRANTS** Defendant Doe's Motion (Dkt. # 18), and **DISMISSES** Benavidez's Complaint (Dkt. # 1), in its entirety, **WITH PREJUDICE**.

**IT IS SO ORDERED**.

**/s/ Peter C. Economus – September 12, 2008**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**